**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**LEO DONALD DRONE, JR.,**

                                            **CASE NO. 2:17-CV-00266**
      **Petitioner,**                   **CRIM. NO. 2:15-CR-00192(1)**
                                              **JUDGE GEORGE C. SMITH**
           **v.**                         **Magistrate Judge Chelsey M. Vascura**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this *Motion to Vacate under 28 U.S.C. § 2255.* For the reasons that follow, the Magistrate Judge **RECOMMENDS** that all of Petitioner's claims, with the exception of his claim that he was denied the effective assistance of counsel based on his attorney's failure to file an appeal after being requested to do so, be **DISMISSED.**

The Magistrate Judge further **RECOMMENDS** that counsel be appointed to represent Petitioner at an evidentiary hearing on his claim that he was denied the effective assistance of counsel based on his attorney's failure to file an appeal.

### I. Facts and Procedural History

On January 13, 2016, Petitioner pleaded guilty pursuant to the terms of his negotiated *Plea Agreement*, to charges of conspiracy to distribute and to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846 and § 841(b)(1)(B)(i). (ECF No. 55.) On April 28, 2016, the District Court imposed a sentence of 90 months of imprisonment, to be followed by four years of supervised release, and ordered the forfeiture of the property set forth in Forfeiture Count A, Exhibits 1 and 2 of the *Indictment*. (ECF No. 87.) Petitioner did not file an appeal.

On April 3, 2017, Petitioner filed this *Motion to Vacate under 28 U.S.C. § 2255*. He claims that he was denied the effective assistance of counsel during plea negotiations because his attorney failed to investigate, failed to advise him of the likely consequences of a guilty plea as opposed to proceeding to trial, and failed to attempt to negotiate more favorable terms in the *Plea Agreement*. Petitioner asserts that he was denied the effective assistance of counsel at sentencing, because his attorney failed to review with him or explain the *PreSentence Investigation Report* and failed to file objections to the *PreSentence Investigation Report*. Finally, Petitioner asserts that he was denied the effective assistance of counsel when his attorney failed to file a notice of appeal after Petitioner requested that he do so. Respondent argues that all of Petitioner's claims lack merit.

## II. Standard of Review

In order to obtain relief under 28 U.S.C. § 2255, a petitioner must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck*, 441 U.S. 780, 783 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or when the trial court lacked jurisdiction, when the sentence was in excess of the maximum sentence allowed by law, or when the judgment or conviction is "otherwise subject to collateral attack." *United States v. Jalili*, 925 F.2d 889, 893 (6th Cir. 1991). In the absence of constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Davis v. United States*, 417 U.S. 333, 346 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 428–429 (1962)); *see also Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2006). However, "'[a] § 2255 motion may not be

used to relitigate an issue that was raised on appeal absent highly exception circumstances.'"

*DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996)(quoting *United States v. Brown*, No. 94-5917, 1995 WL 465802 (6th Cir. 1995)). Further, non-constitutional claims not raised at trial or on direct appeal are waived on collateral review except where the errors amount to something akin to a denial of due process. Accordingly, claims that could have been raised on direct appeal, but were not, will not be entertained on a motion under § 2255 unless the petitioner shows (1) cause and actual prejudice sufficient to excuse his failure to raise the claims previously or (2) that he is "actually innocent" of the crime. *Ray v. United States,* 721 F.3d 758, 761 (6th Cir. 2001(citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal citations omitted).

> A petitioner who entered a guilty plea must show an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)(citing *Abrahamson*, 507 U.S. at 637). Therefore, a court may only grant relief under § 2255 if the petitioner demonstrates "'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Id.* at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). A petitioner further bears the burden of articulating sufficient facts to state a viable claim for relief under § 2255. Vague and conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant relief. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).

*United States v. Noble*, No. 1:14-cr-135, 2017 WL 626130, at *3 (N.D. Ohio Feb. 15, 2017).

### III. Ineffective Assistance of Counsel

"In all criminal prosecutions," the Sixth Amendment affords "the accused...the right...to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011)

(citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that counsel's performance was deficient, or that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment, and that this deficient performance prejudiced the petitioner. *Id*. at 687. This showing requires that defense counsel's errors were so serious as to deprive the defendant of a fair and reliable trial. *Id*.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). Given the difficulties inherent in determining whether an attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. Nevertheless, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. Therefore, a petitioner must also establish prejudice in order to prevail on a claim of ineffective assistance of counsel. *Id*. at 692.

In order to establish prejudice, a petitioner must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of Strickland in order to demonstrate ineffective assistance of counsel, should a court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

Because a criminal defendant waives numerous constitutional rights when he pleads guilty, the guilty plea must be entered knowingly and voluntarily in order to be constitutionally

valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). In applying this standard, a court must look at the totality of the circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). Further, a criminal defendant cannot successfully challenge the voluntariness of his plea merely on the basis that he was motivated to plead guilty. *Brady v. United States*, 397 U.S. 742, 750 (1970).

However, a petitioner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). *Strickland's* two part test applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks,* 852 F.2d at 884. In order to obtain relief on that basis, however, a petitioner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases. *Hill,* 474 U.S. at 59; *Sparks*, 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

Petitioner has failed to meet this standard here. Petitioner claims that his attorney failed to consult with him regarding the case or provide him with sufficient information so that he could make an informed decision regarding whether to enter a guilty plea. (ECF No. 102-1, PAGEID# 336.) Petitioner complains that his attorney urged him to cooperate, advised him to plead guilty, and pressured him into so doing. Additionally, Petitioner contends that his attorney failed to conduct pre-trial investigation as to information regarding the person who set Petitioner up as criminally responsible for the acts charged and facts indicating that Petitioner only participated in five drug transactions and did not own the apartment used as a "stash" house. Petitioner complains that counsel failed to require testing of the drugs seized, which would have resulted in a reduced sentence, because Petitioner "cut" the drugs that he sold. Petitioner states that he did not agree to the forfeiture of property or any enhancements of his recommended sentence under the advisory United States Sentencing Guidelines. According to Petitioner, he was forced to sign the *Plea Agreement* on the day of the guilty plea hearing, without being provided sufficient time to review its terms. Petitioner states that he attempted to hire a new attorney, but was unable to do so, and the prosecutor told him that the plea offer would be withdrawn if he hired a new attorney. Petitioner maintains that, but for the ineffective performance of his attorney, it is reasonably probable that he would have pleaded guilty without a plea agreement or proceeded to trial. Petitioner asserts that his attorney failed to negotiate more favorable terms on his behalf and improperly advised him that entry of a guilty plea was his best option under the circumstances of this case.

In response, Respondent has submitted an *Affidavit* from Michael H. Siewert, Petitioner's former defense counsel, which indicates in relevant part as follows:

> I visited in the jail with Mr. Drone on sixteen (16) different occasions to discuss this case. These visits do not include

additional consultations which occurred before, during, and after the proffers with the government.

Specifically, I met with Mr. Drone on the following dates:

a.  August 19, 2015
b. August 22, 2015
c. August 24, 2015
d. August 29, 2015
e. September 9, 2015
f. September 17, 2015
g. September 30, 2015
h. October 12, 2015
i. December 14, 2015
j. December 16, 2015
k. December 22, 2015
l. January 22, 2016
m. February 9, 2016
n. March 4, 2016
o. March 24, 2016
p. April 25, 2016

Mr. Drone decided from the beginning of the case that he did not want to contest the charges but rather was seeking to mitigate his position.  In our discussions, he was very aware that the charges against him could be enhanced.  The primary objective was to plead to the indictment and to hopefully obtain additional relief pursuant to a 5.K.1.1 motion.

In our initial strategy discussions Mr. Drone and I discussed the nature of his activities.  After these discussions, I agreed with Mr. Drone that an effort to mitigate his exposure would be his best plan.

In an effort to achieve Mr. Drone's objectives, I scheduled with AUSA Solove and through her the various law enforcement agencies involved, a number if [sic] proffer meetings.

Mr. Drone did provide information.  Unfortunately, none of it was "actionable" or rendered substantial assistance to the government.  Nonetheless, he did provide information.

I continued conversations with law enforcement in an effort to render Mr. Drone's cooperation "substantial[.]"  Most of these discussion[s] were with DEA Agent Matthew Heaufelder [sic], but Mr. Drone and I did meet with Columbus Homicide Detective

Steve Eppert. The meeting with Mr. Eppert was outside of the proffers in September.

AUSA Solove and I had [a] number of discussions about the plea and its terms. The government's response to my efforts to obtain the best possible plea arrangement are [sic] contained in AUSA Solove's November 6, 2015 email which is attached.

I had three separate meetings with Mr. Drone in December of 2015. All of these meetings revolved around the plea agreement and the terms of that agreement.

I believe that Mr. Drone was fully aware of the terms of the agreement, as he acknowledged in Court, understood them and agreed with them.

I did discuss that the minimum term of imprisonment would be sixty months or five years.

The Court did notice an error in the plea agreement in that the maximum possible term was incorrect. Specifically the original plea agreement specified a maximum potential prison term of 20 years and the correct maximum should have been 40 years. An amended plea agreement was created to correct this error.

The changes in the plea agreement and the reasons for the change were reviewed with Mr. Drone by the Court and myself. By my recollection, Mr. Drone was given the choice of continuing the hearing or of proceeding with the correction that day. Mr. Drone chose to proceed. He did not ever question this decision or raise issue with this decision.

The presentence report recommended a 200 month sentence in this case.

I did file objections to some aspects of the presentence report. Those objections were reviewed by Mr. Drone.

Mr. Drone never requested that I file an appeal in this case. In fact, at the time of sentencing Mr. Drone was quite pleased with my efforts on his behalf as the sentence imposed was less than half of the recommended sentence.

*Affidavit*, Michael H. Siewert (Doc. 116-3, PAGEID# 505-07.)

The email regarding Petitioner's proposed plea agreement, dated November 6, 2015, indicates that Petitioner had a prior drug trafficking offense that would have increased his mandatory minimum sentence to a term of 10 years under the provision of 21 U.S.C. § 851;[1]

---

[1] 21 U.S.C. § 851 provides as follows:

(a) Information filed by United States Attorney

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon a showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

(2) An information may not be filed under this section if the increased punishment which may be imposed is imprisonment for a term in excess of three years unless the person either waived or was afforded prosecution by indictment for the offense for which such increased punishment may be imposed.

(b) Affirmation or denial of previous conviction

If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

(c) Denial; written response; hearing

(1) If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file a written response to the information. A copy of the response shall be served upon the United States attorney. The court shall hold a hearing to determine any issues raised by the response which would except the person from increased punishment. The failure of the United States attorney to include in the information the complete criminal record of the person or any facts in addition to the convictions to be relied upon shall not constitute grounds for invalidating the notice given in the information required by subsection (a)(1) of this section. The hearing shall be before the court without a jury and either party may introduce evidence. Except as otherwise provided in paragraph (2) of this subsection, the United States attorney shall have the burden of proof beyond a reasonable doubt on any issue of fact. At the request of either party, the court shall enter findings of fact and conclusions of law.

(2) A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response. Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in

however, in view of Petitioner's anticipated guilty plea, the prosecutor would agree not to include this enhanced penalty. (PAGEID# 508.) The government also agreed not to pursue a charge for using or carrying a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c), thereby eliminating a potential mandatory consecutive five year prison term, in recognition of Petitioner's cooperation at that point in time. *See* 18 U.S.C. § 924(c)(1)(A)(i).[2] The parties had also discussed the potential filing of a motion for downward departure in the

---

reliance thereon, shall be waived unless good cause be shown for failure to make a timely challenge.

(d) Imposition of sentence

(1) If the person files no response to the information, or if the court determines, after hearing, that the person is subject to increased punishment by reason of prior convictions, the court shall proceed to impose sentence upon him as provided by this part.

(2) If the court determines that the person has not been convicted as alleged in the information, that a conviction alleged in the information is invalid, or that the person is otherwise not subject to an increased sentence as a matter of law, the court shall, at the request of the United States attorney, postpone sentence to allow an appeal from that determination. If no such request is made, the court shall impose sentence as provided by this part. The person may appeal from an order postponing sentence as if sentence had been pronounced and a final judgment of conviction entered.

(e) Statute of limitations

No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction.

[2] 18 U.S.C. § 924(c)(1)(A)(i) provides as follows:

Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--

(i) be sentenced to a term of imprisonment of not less than 5 years[.]

sentencing guidelines by the government pursuant to U.S.S.G. § 5K1.1;[3] however, the prosecutor

indicated that she did not anticipate the filing of such a motion.

> I have included 5K language, but at this time, do not believe that
> he has helped in the prosecution of others and will not be filing
> one.  The information he gave is incomplete and missing in the
> kind of detail (particularly where he got the guns) that would be
> necessary.

(PAGEID# 508.)

The record reflects that, on August 13, 2015, a *Sealed Indictment* was filed charging

Petitioner with conspiracy to distribute more than 100 grams of heroin and conspiracy to

distribute more than 50 grams of methamphetamine and the forfeiture of certain property.  (ECF

No. 3.)  On January 4, 2016, Petitioner signed a *Plea Agreement* indicating his agreement to

plead guilty to Count One, conspiracy to distribute and to possess with intent to distribute heroin.

Petitioner indicated that he understood that he faced a minimum term of five years, and up to

twenty years imprisonment.  (ECF No. 55, PAGEID# 94.)  On January 13, 2016, he signed an

*Amended Plea Agreement* indicating that he understood that he faced up to forty years

imprisonment.  (ECF No. 58, PAGEID# 106.)  All other terms of the *Plea Agreement* and

*Amended Plea Agreement* are the same.  Petitioner agreed to the voluntary surrender for

forfeiture to the United States all property listed in attached exhibits to the *Amended Plea

Agreement*.  (PAGEID# 107, 113-15.)  Petitioner understood that the Court could impose the

maximum sentence and that any estimate of the probable sentence range that he may have

received was a prediction and not a promise.  The United States made no promise or

representation regarding the sentence that would be imposed, and Petitioner could not withdraw

his guilty plea based on the actual sentence imposed.  (PAGEID# 108.)  Petitioner agreed that

---

[3] U.S.S.G. § 5K1.1 provides for the filing of a motion for a downward departure from the sentencing guidelines
based on a criminal defendant's substantial assistance to the authorities.

U.S.S.G. § 2D2.1(a)(5) and (c)(8) applied, resulting in a base offense level of 24; that his recommended sentence under the United States Sentencing Guidelines would be enhanced two points for possession of a dangerous weapon under § 2D1.1(b)(1), two points for maintaining a premises for the purpose of distributing a controlled substance under § 2D1.1(b)(12), and two points pursuant to § 3B1.1(c) for being an organizer, leader, manager, or supervisor in the criminal activity. (PAGEID# 108-09.) Petitioner would obtain a three-point reduction in his recommended sentence for his acceptance of responsibility and for timely notifying the authorities of his intention to plead guilty. (PAGEID# 109.) The government agreed to dismiss Count Two and not to file any additional criminal charges against Petitioner based on the activities charged. (PAGEID# 110.)

On January 13, 2016, at the time of his guilty plea hearing, Petitioner stated while under oath that he understood the nature and meaning of the charge against him, had discussed it with his attorney, and believed that counsel was fully informed about the facts and circumstances on which the charge was based. (Doc. 116-1, PAGEID# 436-37.) Defense counsel had fully advised Petitioner of the nature and meaning of the charge as well as any available defenses. Petitioner was satisfied with the advice and representation of counsel. (PAGEID# 437.) The Court advised Petitioner of the elements of the offense charged. Petitioner indicated that he understood. (PAGEID# 437-38.) He understood that he faced a mandatory minimum term of five years and up to forty years in prison. (PAGEID# 438-39.) Petitioner reiterated at his sentencing hearing that he understood that he faced a statutory minimum mandatory sentence of five years and up to 40 years in prison. *Sentencing Transcript* (Doc. 116-2, PAGEID# 464-65.) Petitioner agreed to the forfeiture of money, vehicles, real estate, firearms, and certain jewelry. *Guilty Plea Transcript* (Doc. 116-1, PAGEID# 439.) He had discussed with his attorney how the

advisory sentencing guidelines might apply in his case. (PAGEID# 443.) He understood that he

would not be able to withdraw his guilty plea if the Court imposed a sentence that was more

severe than he had anticipated. (PAGEID# 444-45.) The Court advised him of all of the rights

that he was waiving by entry of his guilty plea. Petitioner indicated that he understood.

(PAGEID# 446-47.) The prosecutor stated the terms of the *Amended Plea Agreement.*

Petitioner and his attorney agreed with those terms. (PAGEID# 447-51.) Petitioner denied being

made any other promises or assurances of any kind that induced him to enter a guilty plea.

(PAGEID# 453.) His decision to plead guilty was his own free and voluntary act. He denied

being subjected to any threats or force of any kind that caused him to plead guilty. (PAGEID#

454.)

> Agent Heufelder summarized the facts of the case as follows:

> > Since early 2015, the Ohio State Highway Patrol, Columbus
> > division of Police Narcotics, and DEA Columbus have investigated
> > the drug trafficking activities of Leo Drone and his associates.
> > Between April and mid-August 2015, law enforcement directed
> > both a confidential informant and an undercover agent in the
> > controlled purchases of ounce quantities of heroin and
> > methamphetamine from Leo Drone. These purchases consisted of
> > ten separate transactions and totaled approximately five ounces of
> > heroin, four ounces of methamphetamine, and 50 oxycodone pills.
> > On each occasion, Drone either delivered the narcotics himself or
> > directed a courier to deliver after negotiating directly with a
> > confidential informant or undercover agent.

> > Throughout this time period, Drone conspired with his source of
> > supply to obtain narcotics for distribution. Leo Drone also directed
> > various other co-conspirators, including his co-defendant in this
> > case. These co-conspirators would meet with the confidential
> > informant or undercover agent at various locations to distribute the
> > narcotics that Drone had arranged to sell.

> > On August 19, 2015, Drone was arrested and search warrants were
> > executed at his residence and a second location identified by agents
> > as his stash location. Approximately one pound of marijuana and
> > $141,372 in U.S. currency were among the items seized from the

residence. A summary of items seized from Drone's stash house include over one-and-a-half kilograms of heroin, approximately three quarters of an ounce of cocaine, approximately half a kilogram of methamphetamine, approximately 50 pounds of marijuana, 2,836 oxycodone pills, eight handguns, a rifle, $91,081 in U.S. currency, and two cocaine presses.

These events occurred in the Southern District of Ohio.

(PAGEID# 454-55.) Petitioner agreed that all of these facts were correct. (PAGEID# 456.) He admitted his guilt. (PAGEID# 456-57.)

On April 27, 2016, at the time of his sentencing hearing, Petitioner indicated that he had received a copy of the *PreSentence Investigation Report*. He had read it, understood it, and had discussed it with his attorney. (Doc. 101, PAGEID# 267-68.) He had no questions about the *PreSentence Investigation Report*, although he did not agree with and had objections to the report. (PAGEID# 268-69.) Petitioner acknowledged that he had agreed to the forfeiture of any interest in the property located at 56-58 Hague Avenue, Columbus, Ohio and Lot Number 725 and the north one-half of Lot 726 in the Wicklow Extension Edition, as well as the forfeiture of any jewelry described in Exhibit 2 which had been seized in August 2015. (PAGEID# 271.) Defense counsel objected to the probation officer's computation of Petitioner's base offense level under the advisory United States Sentencing Guidelines and to the amount of heroin attributable to Petitioner, as some of the drugs seized had been mixed with brown sugar. Defense counsel also objected to a two-level increase in Petitioner's recommended guideline sentence relating to Petitioner using his relationship with his brother and co-defendant to his advantage to become involved in the conspiracy. *See Addendum to PreSentence Report*.

The *PreSentence Investigation Report* indicates that Petitioner's recommended guideline sentence was 262 to 327 months of incarceration. The probation officer recommended 200 months. *See Sentencing Recommendation*. Under the terms of Petitioner's negotiated *Plea*

*Agreement*, however, the parties had agreed to a base offense level of 24, which resulted in a

substantially reduced recommended guideline sentence of 108 to 135 months imprisonment.

*PreSentence Investigation Report,* ¶¶ 97, 98; *see also United States Sentencing Memorandum*

(Doc. 204.)  The drugs found in the stash house were not included in calculating Petitioner's

recommended guideline sentence in view of Petitioner's cooperation.  *Sentencing Transcript*

(Doc. 101, PAGEID# 274-76.)    Defense counsel objected to the two-level increase in

Petitioner's recommended guideline sentence based on his admission to possession of firearms

found in the stash house.  (*PreSentence Investigation Report*, ¶ 28; PAGEID# 276.)  Defense

counsel argued for a term of 72 months of imprisonment.  *Defendant Leo Drone Sentencing*

*Memorandum* (ECF No. 85); *Sentencing Transcript* (Doc. 101, PAGEID# 284-89.)  The

government recommended a sentence at the low end of the guideline range.  *Sentencing*

*Transcript* (Doc. 101, PAGEID# 283.)  The Court recognized the generous terms of Petitioner's

*Plea Agreement*:

> I will have to admit when I first read the facts of this matter and
> then read the plea agreement, I was a bit surprised. . . . I think it is
> a generous plea agreement[.]

(PAGEID# 284.)

> Let's assume that we go to the guidelines that you guys negotiated
> in the plea agreement, and I have accepted that.  Well, we are still
> looking at 108 to 135 months in prison. . . . that's 100 months of
> credit that you deserve to give to your attorney.  I am just going to
> tell you.  It is quite a plea agreement.  I told you before, when I read
> this, I was surprised.

(PAGEID# 301.)  Petitioner apologized to his family, the community, and the courts.

(PAGEID# 296-97.)

> The decisions that I made wasn't [sic] correct.  I realize now the
> people's families that I hurt for the possession of poison that I
> possessed.  I just want to apologize to my family because I really

> hurt them more by me being here. I made my own decisions, my own choices. I am not saying they were the greatest choices, but I was trying to do what I had to do to provide for my family. . . . [W]hat I was doing was wrong, and I would like to apologize to the community.

(PAGEID# 297.) The Court imposed a term of 90 months of incarceration, to be followed by

four years of supervised release and ordered the forfeiture of the property described in Forfeiture

Count A, Exhibits 1 and 2 of the *Indictment* that had been agreed upon. (PAGEID# 303-305.)

The Court also advised Petitioner of his right to appeal:

> Mr. Drone, I have the obligation of advising you of your rights on appeal. You have a right to appeal your sentence and your conviction. If you cannot afford the cost of an appeal, you may apply to this Court for leave to appeal without the payment of fees and costs. The appeal must be filed within 14 days of the filing of the entry of judgment, and if you request it, the Clerk of Courts will file the notice of appeal in your behalf.
>
> First of all, do you understand that you can apply to this court for leave to appeal without the payment of fees and costs?
>
> DEFENDANT: right.
>
> COURT: Second, do you understand that you may request that the Clerk of Courts prepare and file a notice of appeal on your behalf?
>
> DEFENDANT: Yes.
>
> COURT: Finally, do you wish to have the Clerk of Courts to file that notice of appeal?
>
> DEFENDANT: No.
>
> COURT: If you change your mind, you have 14 days to file the notice of appeal. Contact Mr. Siewert or the Clerk's office through the Marshal's office. Do you understand?
>
> DEFENDANT: Yes, sir.

(PAGEID# 308-09.)

Upon review of the record, Petitioner has failed to establish the denial of the effective assistance of counsel through the sentencing stage. A review of the record suggests that the government possessed substantial evidence of Petitioner's guilt and would likely have been able to establish the charges against him. By entry of his guilty plea, Petitioner substantially reduced his potential prison exposure. As discussed, Petitioner had prior convictions on two counts of trafficking in cocaine. *PreSentence Investigation Report*, ¶ 51. Nonetheless, the prosecutor agreed not to pursue the penalty enhancement provisions of 21 U.S.C. § 841(b)(1)(B),[4] that would have required a mandatory minimum sentence of ten years. *See United States v. Pritchett*, 496 F.3d 537, 541 (6th Cir. 2007) ("in order to avail itself of these enhanced penalties, the government must file an information with the court and serve the defendant, stating in writing the previous convictions on which it intends to rely, and it must do so before trial or before a guilty plea is entered") (citing 21 U.S.C. § 851(a)(1); *United States v. Layne*, 192 F.3d 556, 575 (6th Cir. 1999), *cert. denied*, 529 U.S. 1029 (2000). Additionally, Petitioner avoided the potential filing of an additional charge under 18 U.S.C. § 924(c) for using a firearm during and in relation to a drug trafficking crime, which would have carried an additional consecutive term of five years of incarceration. The government dismissed the charges in Count 2 of the *Indictment*,

---

[4] 21 U.S.C. § 841(b)(1)(B) provides as follows:

> In the case of a violation of subsection (a) of this section involving—
> (i) 100 grams or more of a mixture or substance containing a detectable amount of heroin;
>
> ***
>
> such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years. . . . If any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment. . . any sentence imposed under this subparagraph shall. . . if there was such a prior conviction, include a term of supervised release of at least 8 years in addition to such term of imprisonment. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person sentenced under this subparagraph. No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed therein.

and agreed to a base offense level of 24, which did not include additional quantities of drugs that purportedly had been confiscated. Also, Petitioner obtained a three-level reduction in his recommended sentence for his acceptance of responsibility and timely notifying the authorities of his intention to plead guilty. *PreSentence Investigation Report*, ¶¶ 39, 40. Although the government did not file a motion for a downward departure in Petitioner's sentence pursuant to § 5K1.1 of the Federal Sentencing Guidelines or Rule 35(b) of the Federal Rules of Criminal Procedure, the filing of such a motion had remained a possibility. (Doc. 55, PAGEID# 98.)[5] In view of these circumstances, defense counsel did not act in a constitutionally ineffective manner by advising Petitioner to enter a guilty plea. Nothing in the record supports Petitioner's claim that his attorney could have obtained additional exculpatory information by further investigation on Petitioner's behalf or done anything to obtain more favorable terms. Contrary to Petitioner's allegations now that he had no involvement in more than five drug transactions and that he was forced to enter a guilty plea, Petitioner admitted his guilt while under oath at the plea hearing. He denied being forced into entering a guilty plea. The record likewise contradicts Petitioner's allegations now that he did not agree to certain sentencing enhancements, or to the forfeiture of property. At the plea hearing, Petitioner stated that he was satisfied with the advice and representation of counsel. In view of the record, Petitioner's unsupported and conclusory allegations are not worthy of credit.

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea proceeding], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

---

[5] At sentencing, the prosecutor indicated that the government would not be filing a 5K motion because Petitioner was not able to provide sufficient useful information. *Sentencing Transcript* (Doc. 101, Page ID# 275-76.)

*Blackledge v. Allison,* 431 U.S. 63, 73–75 (1977).

In short, Petitioner has failed to establish that, but for the errors of his attorney, there is a reasonable probability that he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Sparks,* 852 F.2d at 884. As a result of the entry of his guilty plea, Petitioner was able to obtain a sentence well below that of the recommended guideline sentence and the recommended sentencing range of 108-135 months as provided for under the terms of the *Plea Agreement*.

Petitioner also alleges that he was denied the effective assistance of counsel because he requested that his attorney file an appeal but his attorney failed to do so. (ECF No. 102, PAGEID #315). The failure of an attorney to file a timely appeal upon the defendant's request constitutes ineffective assistance of counsel.

> [E]very Court of Appeals that has addressed the issue has held that a lawyer's failure to appeal a judgment, in disregard of the defendant's request, is ineffective assistance of counsel regardless of whether the appeal would have been successful or not. *See Castellanos v. United States*, 26 F.3d 717, 719 (7th Cir.1994); *United States v. Peak*, 992 F.2d 39, 42 (4th Cir.1993); *United States v. Horodner,* 993 F.2d 191, 195 (9th Cir.1993); *Bonneau v. United States*, 961 F.2d 17, 23 (1st Cir.1992); *United States v. Davis,* 929 F.2d 554, 557 (10th Cir.1991); *Williams v. Lockhart*, 849 F.2d 1134, 1137 n. 3 (8th Cir.1988). We agree with those courts and hold that the failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment.

*Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir.1998).

> [A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. *See Rodriquez v. United States*, 395 U.S. 327, 89 S. Ct. 1715, 23 L.Ed.2d 340 (1969); *cf. Peugeot v. United States*, 526 U.S. 23, 28, 119 S. Ct. 961, 143 L.Ed.2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had

merit"). This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.

*Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Thus, Petitioner has alleged facts which, if true, may entitle him to relief. Petitioner's former attorney, Mr. Siewert, has stated, as noted previously, that Petitioner did not direct him to file a notice of appeal. The Court must, therefore, conduct an evidentiary hearing to determine whether Petitioner timely directed his attorney to file a notice of appeal on his behalf. *See Campbell v. United States*, 686 F.3d 353, 360 (6th Cir. 2012)(citing *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1989)(evidentiary hearing required unless record conclusively shows that the petitioner is not entitled to relief)).

## IV. Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that Petitioner's claims, with the exception of his claim that he was denied the effective assistance of counsel based on his attorney's failure to file an appeal after being requested to do so, be **DISMISSED.**

The Magistrate Judge further **RECOMMENDS** (1) that the Court conduct an evidentiary hearing on Petitioner's claim that he was denied the effective assistance of counsel based on his attorney's failure to file an appeal and (2) that counsel be appointed to represent Petitioner at that hearing.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation.  See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE